IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| RUSSELL TERRY MCELVAIN, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | Civil Action No. 4:16-CV-259-O |
| | § | |
| LORIE DAVIS, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

## OPINION AND ORDER

Before the Court is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by petitioner, Russell Terry McElvain, a state prisoner confined in the Correctional Institutions Division of the Texas Department of Criminal Justice (TDCJ), against Lorie Davis, Director of TDCJ, Respondent. After considering the pleadings and relief sought by Petitioner, the Court has concluded that the petition should be denied.

## I. BACKGROUND

Petitioner was charged in Tarrant County, Texas, Case No. 1227000D, with continuous sexual abuse of a child, K.M., his adopted daughter, while she was younger than 14 years of age. Adm. R., Clerk's R. 2, ECF No. 12-1. On April 7, 2011, a jury found him guilty of the offense and assessed his punishment at 99 years' confinement. *Id.* at 123. The evidence at trial was that Petitioner began sexually abusing K.M. shortly after she was placed in Petitioner's and his wife's home as a foster child at the age of four. *Id.*, Reporter's R., vol. 5, 81, ECF No. 12-9. Petitioner and his wife eventually adopted K.M. *Id.* When K.M. was 14 years old, she outcried to her middle school attendance secretary. *Id.* at 35-36. K.M. later detailed the abuse in an interview with a forensic

interviewer with Alliance for Children. *Id.* at 55-74. During two searches of Petitioner's home, the police seized, among other things, videotapes and photos of K.M., many pornographic in nature, in the attic and a shed in the back yard. *Id.* at 91-93, 117-18, 132, 139, 141-49. Following Petitioner's arrest, he gave a videotaped statement to police, in which he admitted to sexually abusing, photographing, and videotaping K.M. *Id.* at 122-23, 128.

## II. ISSUES

Petitioner's claims are multitudinous and addressed as thoroughly as practicable. His claims are as follows:

(1)    the second search of the shed was illegal under the Fourth Amendment;
(2)    the police interrogation was illegal;
(3)    Texas Penal Code § 21.02 is unconstitutional by not requiring jury unanimity;
(4)    one of the outcry witnesses perjured herself;
(5)    the evidence was tainted;
(6)    the jury instructions were insufficient;
(7)    he was denied a fair trial due to prosecutorial misconduct;
(8)    he received ineffective assistance of trial counsel;
(9)    he was denied a fair trial because the jury was permitted "to convict using evidence not permitted";
(10)    the trial court erred by allowing a second outcry witness to testify;
(11)    the trial court erred by admitting all evidence defined by the prosecution as child pornography without reviewing the evidence;
(12)    Texas Penal Code § 43.25 is unconstitutionally overbroad;
(13)    Texas Penal Code § 21.02(6) is unconstitutionally sexually discriminatory;
(14)    Texas Penal Code § 21.02(6) is unconstitutional because it "does not comport with other sexual offense penal codes";
(15)    Texas Penal Code § 21.02 violates the Texas Constitution;
(16)    he was unaware of the penal code "by which he was charged";
(17)    he received ineffective assistance of appellate counsel; and
(18)    he received ineffective assistance of counsel "due to no motion for a new trial."

Pet. 6-7i, ECF No. 1.

## III. RULE 5 STATEMENT

Respondent believes that the petition is neither successive nor barred by the statute of

limitations, but she asserts that multiple grounds are unexhausted and/or procedurally barred. Resp't's Ans. 12, ECF No. 23.

## IV. PROCEDURAL DEFAULT

Respondent claims Petitioner's grounds two, six, twelve, thirteen, and fourteen were forfeited in state court because no contemporaneous request, objection, or motion was raised at trial and, thus, are procedurally barred from federal habeas review. Resp't's Am. Answer 15-18; Adm. R., Op. 4-5, ECF No. 12-2; Adm. R., State Writ 234, 239-40.[1] Respondent claims Petitioner's grounds three and five, raised for the first time in this federal petition, are unexhausted and procedurally barred by the Texas abuse-of-the-writ doctrine. *Id.* at 18-19. And, Respondent claims that Petitioner's grounds seven, nine, ten, and eleven are procedurally barred under "the *Gardner* rule." *Id.* at 19-21.

First, Respondent asserts that grounds two, six, twelve, thirteen, and fourteen are procedurally barred under Texas's contemporaneous-objection rule. Resp't's Am. Answer 15-18, ECF No. 16. Under the procedural default doctrine, a federal court may not consider a state prisoner's federal habeas claim when the last state court to consider the claim expressly and unambiguously based its denial of relief on an independent and adequate state procedural default. *See Coleman v. Thompson*, 501 U.S. 722, 729, (1991); *Fisher v. Texas*, 169 F.3d 295, 300 (5th Cir. 1999). "This doctrine ensures that federal courts give proper respect to state procedural rules." *Glover v. Cain,* 128 F.3d 900, 902 (5th Cir. 1997). Here, the state courts clearly relied upon a firmly established and regularly followed state procedural rule to deny the claims. *See Ex parte Crispen,* 777 S.W.2d 103, 105 (Tex. Crim. App. 1989) (explaining its adherence to the contemporary-

---

[1]"State Writ" refers to "part 1" and "part 2" of the record of Petitioner's state habeas-corpus proceeding in WR-81,181-02, ECF Nos. 12-19 and 12-20.

objection rule). *See also Dowthitt v. Johnson,* 230 F.3d 733, 752 (5th Cir. 2000) (recognizing that the Texas contemporaneous-objection rule, which requires a timely objection to preserve error for appeal, is strictly and regularly applied, and is therefore an adequate state procedural bar to federal review). Accordingly, federal habeas review of the claims is barred unless Petitioner can demonstrate cause for the default and actual prejudice, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice–*i.e.,* that he is actually innocent of the offense for which he was convicted. *Coleman,* 501 U.S. at 750.

Next, Respondent asserts that grounds three and five were raised for the first time in this federal petition and are unexhausted and procedurally barred from federal habeas review. Resp't's Am. Answer 18-19, ECF No. 16. Petitioners seeking habeas-corpus relief under § 2254 are required to exhaust all claims in state court before requesting federal collateral relief. 28 U.S.C. § 2254(b)(1); *Fisher v. Texas,* 169 F.3d 295, 302 (5th Cir. 1999). The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest court of the state. *O'Sullivan v. Boerckel,* 526 U.S. 838, 842-48 (1999); *Fisher,* 169 F.3d at 302; *Carter v. Estelle,* 677 F.2d 427, 443 (5th Cir. 1982). In Texas, the highest state court for criminal matters is the Texas Court of Criminal Appeals. *Richardson v. Procunier,* 762 F.2d 429, 431-32 (5th Cir. 1985). Therefore, a Texas prisoner may satisfy the exhaustion requirement by presenting both the factual and legal substance of a claim to the Texas Court of Criminal Appeals in either a petition for discretionary review or a state habeas-corpus proceeding pursuant to article 11.07 of the Texas Code of Criminal Procedure in a procedurally proper manner. *See* TEX. CODE CRIM. PROC. ANN. art. 11.07 (West 2015); *Depuy v. Butler,* 837 F.2d 699, 702 (5th Cir. 1988).

Contrary to Respondent's assertion, a review of the state court records reveals that ground

three was raised in Petitioner's petition for discretionary review and that ground five was raised in the context of an ineffective-assistance-of-counsel claim under his second ground in Petitioner's state habeas application. Adm. R., Pet. for Discretionary Review 1, ECF No. 12-6 & State Writ 9, ECF No. 12-19. Consequently, the claims are addressed in this opinion to the extent they were exhausted in state court.

On the other hand, the record does reveal that Petitioner's fifteenth ground was not fully exhausted in the state courts. In his federal petition, Petitioner claims that "Texas Penal Code § 21.02 violates the Texas Constitution and by doing so violates due process and due course of the U.S. Constitution." Pet. 7(h), ECF No. 1. In his state habeas application, Petitioner claimed that § 21.002 "violates the Texas Constitution by its title," with no reference to a federal constitutional violation. Adm. R., State Writ 29-30, ECF No. 12-19. Thus, to the extent he now asserts a federal constitutional claim for the first time, the claim is unexhausted for purposes § 2254(b)(1)(A). Under the Texas abuse-of-the-writ doctrine, however, Petitioner cannot now return to state court for purposes of exhausting the claim. *See* TEX. CODE CRIM. PROC. ANN. art. 11.07, § 4(a)-(c) (West 2015). The abuse-of-the-writ doctrine represents an adequate state procedural bar to federal habeas review. *See Smith v. Johnson*, 216 F.3d 521, 523-24 (5th Cir. 2000); *Nobles v. Johnson*, 127 F.3d 409, 423 (5th Cir. 1997). Therefore, absent a showing of cause and prejudice or a miscarriage of justice, the claim is unexhausted and procedurally barred from this Court's review. *Coleman,* 501 U.S. at 750.

Finally, Respondent asserts that grounds seven, nine, ten, and eleven are barred under *Ex parte Gardner,* 959 S.W.2d 189 (Tex. Crim. App. 1996). In *Ex parte Gardner*, the Texas Court of Criminal Appeals held that record-based claims not raised on direct appeal are forfeited from state

5

habeas review. 959 S.W.2d at 199. Although raised in Petitioner's state habeas application, the state habeas court clearly relied upon the "*Gardner* rule" in denying these claims. Adm. R., State Writ 235-39, ECF No. 12-20. *See also Busby v. Dretke,* 359 F.3d 708, 719 (5th Cir. 2004) (recognizing that the Texas procedural rule as stated in *Ex parte Gardner* as being "firmly established" and "an adequate state ground capable of barring federal habeas review"). Therefore, absent a showing of cause and prejudice or a miscarriage of justice, the claim is unexhausted and procedurally barred from this Court's review. *Coleman,* 501 U.S. at 750.

In an effort to establish cause for his state procedural defaults, Petitioner merely asserts that the forfeiture of the claims was the result of attorney error or inadvertence. Pet'r's Traverse 5-8, ECF No. 33. However, to the extent he contends counsel should have made different or additional requests, objections, or motions at trial or raised his claims on appeal, he fails to identify what those challenges should have been and how counsel's decisions not to bring them resulted in harm. Petitioner's conclusory assertion, without more, is insufficient to demonstrate cause and prejudice. *United States v. Holmes,* 406 F.3d 337, 361 (5th Cir. 2005). *See also Green v. Johnson,* 160 F.3d 1029, 1042 (5th Cir. 1998) (stating that mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue). Under the familiar *Strickland* standard, *see infra,* ineffective assistance of counsel requires a showing of both deficient performance and prejudice in order to constitute cause to excuse a procedural default. The mere fact that counsel did not make a request, objection, or motion at trial or raise an issue on appeal is insufficient to show that counsel's decision not to do so was deficient. Petitioner also makes a passing reference to actual innocence. Pet'r's Travers 7, ECF No. 33. However, he presents no new, reliable evidence that was not presented at his trial to make a colorable showing that he is actually

innocent of the offense for which he stands convicted. *See House v. Bell,* 547 U.S. 518, 537 (2006). Consequently, absent a showing of cause and prejudice or a miscarriage of justice, such showing not having been demonstrated, Petitioner's grounds two, six, seven, nine, ten, eleven, twelve, thirteen, fourteen, and fifteen, in part, are procedurally barred from the Court's review.

## V. DISCUSSION

A § 2254 habeas petition is governed by the heightened standard of review provided for in the Anti-Terrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254. Under the Act, a writ of habeas corpus should be granted only if a state court arrives at a decision that is contrary to or an unreasonable application of clearly established federal law as established by the Supreme Court or that is based on an unreasonable determination of the facts in light of the record before the state court. 28 U.S.C. § 2254(d)(1)-(2); *Harrington v. Richter,* 562 U.S. 86, 100 (2011). This standard is difficult to meet and "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Harrington,* 562 U.S. at 102.

Additionally, the statute requires that federal courts give great deference to a state court's factual findings. *Hill v. Johnson,* 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. A petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell,* 537 U.S. 322, 340 (2003); *Williams v. Taylor,* 529 U.S. 362, 399 (2000). Further, when the Texas Court of Criminal Appeals denies a federal claim in a state habeas-corpus application without written opinion, a federal court may presume "that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary" and applied the correct "clearly established federal law, as determined by

the Supreme Court of the United States" unless there is evidence that an incorrect standard was applied, in making its decision. *Johnson v. Williams*, 568 U.S. 289, 298 (2013); *Harrington*, 562 U.S. at 99; *Schaetzle v. Cockrell*, 343 F.3d 440, 444 (5th Cir. 2004).

In this case, the state habeas court entered express findings of fact relevant to one or more of Petitioner's claims, which he has failed to rebut with clear and convincing evidence, and the Texas Court of Criminal Appeals adopted the habeas court's findings. Under these circumstances, this Court must defer to the state courts' factual findings and, absent any indication to the contrary, may assume the Texas Court of Criminal Appeals applied correct standards of federal law to the facts.

### A. Search and Seizure

Under his first ground, Petitioner claims that, in violation of the Fourth Amendment, the second search warrant did not comply with the requirements of article 18.02 of the Texas Code of Criminal Procedure and, thus, the search and seizure of items from the shed was illegal. Pet. 6, ECF No. 1; TEX. CODE CRIM. PROC. ANN. art. 18.02 (West 2015). To the extent Petitioner claims the search was illegal because the warrant failed to comply with article 18.02, the claim is not cognizable in federal habeas review. *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991). Federal habeas relief lies only to rectify a violation of the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *McGuire,* 502 U.S. at 67-68. To the extent Petitioner raises a Fourth Amendment claim, this Court's consideration of the claim is precluded by *Stone v. Powell,* 428 U.S. 465, 494 (1976).

### B. Texas Penal Code § 21.02

Under his third ground, Petitioner challenges the constitutionality of the state's continuous-sexual-abuse statute found under Texas Penal Code § 21.02 on the basis that it does not require jury

unanimity as to "which predicate acts [he] committed." Pet. 7, ECF No. 1. Relying solely on state law, the state appellate court addressed the claim as follows:

> [Petitioner] complains that Section 21.02 of the Texas Penal Code (Continuous Sexual Abuse of Young Child or Children), under which [Petitioner] was convicted, violates [Petitioner]'s right to a unanimous jury verdict under Article V, section 13 of the Texas Constitution because it fails to require that jurors agree on the underlying offenses a defendant has committed. A number of courts of appeals have rejected [Petitioner]'s contention and have determined that section 21.02 does not violate the Texas constitutional right to a unanimous jury verdict. The law on this issue is well-settled, and we decline to evaluate it further.

Adm. R., Op. 6, ECF No. 12-2 (citations omitted).

To the extent Petitioner claims § 22.01 violates the Texas Constitution, the claim fails. As previously noted, federal habeas relief lies only for violations of the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *McGuire,* 502 U.S. at 67-68. Furthermore, the Due Process Clause requires proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged. *See In re Winship,* 397 U.S. 358, 364 (1970). It does not, however, require that juries in state trials be unanimous. *See Schad v. Arizona,* 501 U.S. 624, 631-32 (1991) (plurality op.) (providing rule that jurors not required to agree upon single means of commission of crime applies equally to contention they must agree on one of alternative means of satisfying mental state element of crime); *Johnson v. Louisiana,* 406 U.S. 356, 359 (1972) (rejecting due process challenge to 9-3 state jury verdict). If state juries need not be unanimous on the ultimate question of guilt, it stands to reason that they not be unanimous on which particular acts constituted the illegal course of conduct. *See Schad,* 501 U.S. at 631 (stating "[w]e have never suggested that in returning general verdicts in . . . cases [alleging alternative manner or means of committing an offense] the jurors should be required to agree upon a single means of commission, any more than the

indictments were required to specify one alone"); *Verfes v. Newland,* No. CV-97-3707-FMS, 1998 WL 1148898, at *10 (N.D.Cal. June 29, 1998) (providing absence of unanimity requirement in California's continuing sexual abuse statute does not violate due process), *aff'd,* 198 F.3d 256 (9th Cir. 1999), and *cert. denied,* 529 U.S. 1020 (2000). The Supreme Court has not created a federal jury unanimity requirement nor has it held that "continuous course of conduct" statutes violate the federal constitution. When there is no Supreme Court precedent that controls on the legal issue raised by a petitioner in state court, the state court's decision cannot be contrary to, or an unreasonable application of, clearly established law from the Supreme Court. *Carey v. Musladin,* 549 U.S. 70, 77 (2006).

### C. Outcry-Witness Testimony

Under his fourth ground, Petitioner claims that Lindsey Dula, a child forensic interviewer with Alliance for Children, perjured herself by fabricating testimony that was disproved by the victim and that the conflicting testimony "impeached [the] victim or witness." Pet. 7, ECF No. 1; Pet'r's Traverse 11, ECF No. 33. Specifically, he complains of Dula's testimony that K.M. reported during her interview that Petitioner had forced K.M. to perform oral sex on him by "forcing her mouth open by continuously putting his penis to her mouth." Adm. R., Reporter's R., vol. 5, 65-66, ECF No. 12-9. Dula also testified that K.M. reported certain "sensory details" about the act:

> She talked about how when it was -- when -- when he would do that, that he would put his penis to her mouth and that he continuously pressed his penis to her mouth until she was forced to open her mouth. So she's describing that pressure. She described ejaculation. She said that it was a clear liquid that came from his penis that went in her mouth. She described that it tasted salty and that it was nasty and she said that she had to swallow it because his penis was still in her mouth and she couldn't spit it out.

*Id.* at 72-73. At trial, K.M. denied that Petitioner ever forced her "to put her mouth on his private

parts." *Id.* at 91.

A petitioner must prove that the prosecution knowingly presented or failed to correct materially false testimony during trial. *Kutzner v. Cockrell,* 303 F.3d 333, 336 (5th Cir. 2002). The state habeas court found that there was no proof Dula committed perjury. Adm. R., State Writ 212, ECF No. 12-20. Further, relying solely on state case law, the state court concluded that "[i]nconsistent testimony goes to the credibility of the State's witnesses and does not establish the use of perjured testimony." State Writ 227-28. ECF No. 12-20. Petitioner fails to demonstrate that the state courts' adjudication of the claim is contrary to or an unreasonable application of Supreme Court precedent. Perjury is not established by mere contradictory testimony from witnesses, inconsistencies within a witness's testimony, and conflicts between reports, written statements and the trial testimony of prosecution witnesses. *Koch v. Puckett,* 907 F.2d 524, 531 (5th Cir. 1990).

### D. Tainted Evidence

Under his fifth ground, Petitioner claims that evidence was tainted because the second search-warrant return states that police seized one videotape, but two videotapes were admitted at trial. Pet. 7(b), ECF No. 1; Adm. R., Reporter's R. vol. 5 149, ECF No. 12-9. This claim was raised by Petitioner in the context of an ineffective-assistance-of-counsel claim in the state habeas proceedings. In her affidavit filed in those proceedings, trial counsel addressed the issue, in that context:

> [Petitioner] complains that I failed to challenge the "admission of tainted evidence." At trial, the State presented two Hi-8 video tapes which were discovered during the execution of a search warrant of a shed in the backyard of [Petitioner]'s home which occurred on October 20, 2009. State's Exhibit 44A is a white, 120-minute tape which depicted the child complainant performing sexual acts on herself. State's Exhibit 44B is a black, 60-minute tape which did not contain any depictions of the complainant nor did it contain any pornographic material. The search warrant

return on the October 20, 2009 search did not list the black, 60-minute tape, but listed only the white, 120-minute tape amongst the items seized. However, the black, 60-minute tape was not played for the jury, did not contain any evidence pertinent to this case, and did not harm [Petitioner] in any way. [Petitioner] apparently complains that the black tape should not have been admitted since the search warrant return did not list it as evidence seized during the October 20, 2009 search. The extent of the testimony at trial specific to State's Exhibit 44B (which was not listed on the search warrant return) is as follows:

> Q (prosecutor). And what's on State's 44B?
> A (Detective Trevino). I don't recall.
> Q. But it wasn't K.M.?
> A. No.
> Q. Okay. It wasn't anything --
> A. No
> Q. -- pornographic in nature?
> A. No.

Adm. R., State Writ 181, ECF No. 12-20 (record citations omitted).

The state habeas court found that there was no evidence that Petitioner was harmed by the admission of the black Hi-8 videotape and, thus, rejected Petitioner's ineffective-assistance claim. *Id.* at 228. "Admissibility of evidence is a matter of state law, and only a contention that the admission of the evidence rendered the trial fundamentally unfair or violated a specific constitutional right will be considered in a federal collateral proceeding." *Johnson v. Blackburn,* 778 F.2d 1044, 1050 (5th Cir. 1985). Petitioner fails to assert constitutional error or establish any prejudice as a result of admission of the second videotape.

### E. Ineffective Assistance of Counsel

Under grounds eight, seventeen, and eighteen, Petitioner claims that he received ineffective assistance of trial and appellate counsel. Pet. 7(c)-7(e), 7(I), ECF No. 1. A criminal defendant has a constitutional right to the effective assistance of counsel at trial and on a first appeal as of right. U.S. CONST. amend. VI, XIV; *Evitts v. Lucey*, 469 U.S. 387, 393-95 (1985); *Strickland v.*

*Washington*, 466 U.S. 668, 688 (1984); *Anders v. California*, 386 U.S. 738, 744 (1967). *See also Styron v. Johnson,* 262 F.3d 438, 450 (5th Cir. 2001) (applying the *Strickland* standard to ineffective assistance claims against appellate counsel). An ineffective-assistance claim is governed by the familiar standard set forth in *Strickland v. Washington*. 466 U.S. at 668. To establish ineffective assistance of counsel under this standard, a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688. Both prongs of the *Strickland* test must be met to demonstrate ineffective assistance. *Id.* at 687, 697. In applying this standard, a court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance or sound trial strategy. *Id*. at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689. The Supreme Court emphasized in *Harrington v. Richter* that—

> [t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

562 U.S. at 101 (quoting *Williams v. Taylor,* 529 U.S. 362, 410 (2000) (emphasis in original)). Accordingly, it is necessary only to determine whether the state courts' adjudication of Petitioner's ineffective-assistance claims is contrary to or an objectively unreasonable application of *Strickland.*

*Bell v. Cone,* 535 U.S. 685, 698-99 (2002); *Kittelson v. Dretke,* 426 F.3d 306, 315-17 (5th Cir. 2005); *Schaetzle v. Cockrell,* 343 F.3d 440, 443 (5th Cir. 2003).

Under grounds eight and eighteen, Petitioner claims his trial counsel, John Stickels and Kimberly Campbell, were ineffective for the following reasons:

(1) failing "to put" a lesser-included-offense instruction in the jury charge and verdict form;

(2) failing to separate extraneous evidence from evidence that can be used;

(3) failing to inform the jury how they were to use extraneous evidence at the time it was admitted;

(4) calling Petitioner a pedophile and having "preconceived feelings" of his guilt;

(5) failing to question school officials on cross-examination about any observed interactions between K.M. and Petitioner;

(6) failing to raise an "inadequate time to prepare defense";

(7) failing to clearly present the plea bargain offer;

(8) leaving two jurors on the jury;

(9) failing to present arguments, objections, or request "an adversary hearing to raise [the] issue that all evidence admitted as child porn was not all child porn";

(10) failing to hire a private investigator;

(11) failing to locate, interview, or subpoena witnesses on Petitioner's behalf;

(12) failing to present "any mitigating circumstances to help" Petitioner;

(13) refusing to consider "the possibility of supernatural, satanic influences playing any role in" Petitioner's behavior;

(14) refusing to send Petitioner his case file so "he could pursue post-conviction work";

(15) failing to investigate Petitioner's claim that the oral sex reported to the forensic interviewer occurred when K.M. lived with her biological family;

(16) failing to make an attempt to obtain a bond reduction;

(17) failing to properly preserve Petitioner's "motion to suppress confession for review on appeal;" and

(18) failing to file a motion for new trial.

Pet. 7(c)-7(e), 7(I), ECF No. 1.

John Stickels, who had practiced criminal law for 31 years and was board certified in criminal law, responded briefly to Petitioner's allegations in an affidavit filed in the state habeas proceedings:

14

The most striking thing I remember about [Petitioner]'s trial was the overwhelming video and photographic evidence documenting [Petitioner]'s sexual abuse of the injured party over multiple years. In fact, the state admitted so much evidence that the jury ask[ed] the Judge not to show then [sic] more evidence and to just admit it into evidence. I have reviewed the complaints made by [Petitioner] in his Application for Writ of Habeas Corpus and they are entirely without merit. Every decision that I made during [Petitioner]'s trial was made for strategic purposes.

Adm. R., State Writ 168, ECF No. 12-20.

Kimberly Campbell, who had practiced criminal law for 29 years, responded in a lengthy affidavit (all spelling, grammatical, and/or punctuation errors are in the original):

[Petitioner] complains of the following actions to which I will respond in detail:

1) *I failed to request lesser included offense instruction in the jury charge.*

Based on the pleadings and evidence at trial, I did not believe that the trial court would have granted a lesser-included offense instruction had I requested one. There is a two-pronged test to be used to determine if a lesser included offense must be included in the jury charge when requested by a defendant. The first prong, whether an offense is a lesser included offense of the offense alleged by the State, is a question of law and does not depend upon the evidence produced at trial. The pleadings approach is the only test to use to determine the first part of the inquiry into whether a defendant is entitled to a lesser-included-offense instruction. The first part of the inquiry is this: Are the elements of the lesser offense included within the proof necessary to establish the offense charged? If so, then one must proceed to determine whether some evidence exists in the record that would permit a rational jury to find that, if the defendant is guilty, he is guilty only of the lesser offense.

When that test is applied, in accordance with the cases cited above, sexual performance by a child would possibly be a lesser included offenses of the offense of continuous sexual abuse. Now proceed to the second part of the test: Is there some evidence in the record that would permit a rational jury to find that, if the defendant is guilty, he is guilty only of the lesser offense? When examining the entire record, I believed that there is no evidence in the record that would permit a jury rationally to find that , if [Petitioner] was guilty, he was guilty only of a lesser included offense. Under this record, the lesser included offense was not a valid and rational alternative to the charge against [Petitioner]. Primarily, the complainant testified that the sexual abuse perpetrated against her by [Petitioner] began when she was approximately five years old, soon after she arrived in [Petitioner]'s foster home, and took place uninterrupted over the next ten years until her outcry. Second, the continuity of the

sexual abuse was memorialized in pornographic pictures and video, which showed the complainant's age progression, with some of the photographs even being labeled with the date and complainant's age at the time the picture was taken. Finally, [Petitioner] himself confessed to sexually abusing the complainant over a number of years and memorializing that abuse in pictures and video.

In summary, though a lesser-included offense instruction was a possibility, the magnitude of the persuasive evidence presented at trial by the State foreclosed any realistic likelihood of the trial court granting a lesser-included offense instruction.

2) *I allowed the jury to view pictures which were taken prior to the enactment of the continuous sexual abuse statute.*

At trial, the state was allowed over objection to admit photographs of the complainant which were taken prior to September 1, 2007, the date the continuous sexual abuse statute was enacted. The jury charge here did contain an instruction that the jury could not consider any evidence of acts of sexual abuse . . . which occurred prior to September 1, 2007. Additionally, I, or my co-counsel John Stickels, objected in the pretrial hearing as well as at trial to the admission of any pictures or videos which were taken or filmed prior to September 1, 2007. The state argued that the materials were admissible under Article 38.37 of the Code of Criminal Procedure. The trial court overruled all objections to and motions to suppress the pre-statute depictions.

3) *I failed to inform the jury about how they were to use the extraneous offense evidence at the time it was admitted.*

Based on the discussion of this allegation in [Petitioner]'s *Memorandum of Law in Support of Application for Writ of Habeas Corpus,* [Petitioner] is apparently referring to the pornographic photographs and video portions of the complaint which were taken or filmed prior to the effective date of the continuous sexual abuse of a child statute. Critically, the jury charge included an extraneous offense instruction. I made a strategic trial decision not to requests a jury instruction at the time these materials were admitted, as I believed a jury instruction at that time would tend to draw attention to the pictures and video, and focus the jury's attention to these incriminating and inflammatory depictions of the child complainant. In my professional opinion, I believed that deflecting the jury's attention from, and attempting to minimize, these incredibly damaging pieces of evidence would ultimately be more beneficial to [Petitioner] than drawing attention to them by requesting a limiting instruction at the time of admission.

4) *I called [Petitioner] a pedophile during a visit at the Tarrant County jail.*

[Petitioner] complains that by calling him a pedophile during a jail visit, I infringed on his presumption of innocence. While I did not call [Petitioner] a pedophile, I did inform him that an evaluation by the psychologist I retained, James Womack, to evaluate him had characterized him as a pedophile. Notwithstanding that, my opinion of his guilt or innocence was absolutely irrelevant to whether the presumption of innocence which drapes all criminal defendants was encroached upon in the eyes of the jury. It is important to note that the jury charge contained a proper instruction regarding the presumption of innocence, stating *inter alia* that "[t]he presumption of innocence alone is sufficient to acquit the Defendant, unless the *jurors* are convinced beyond a reasonable doubt of the Defendant's guilt. . . ."

5) *I failed to question either of the two school officials about any observed interactions between [Petitioner] and the complainant.*

[Petitioner] complains that by not cross-examining the school officials about any observed interactions between the complainant and [Petitioner], evidence which might have "placed [Petitioner] in a more positive position" was not elicited. The State presented the testimony of Arlene Treat, the attendance secretary at the complainant's school, and Brandi Perkins, a Haltom City Police Officer who worked as the school resource officer at the complainant's school. Initially, my co-counsel, John Stickels, conducted the cross-examination of both Ms. Treat and Officer Perkins. That being said, I made a strategic trial decision not to open the door to any potentially damaging evidence by asking open-ended questions of the . . . two witnesses, in the dubious hope of obtaining testimony of limited value regarding the observed interactions between [Petitioner] and the complainant. In my professional opinion, the risks of asking such open-ended questions outweighed the limited value of positive testimony which might have been elicited.

6) *I failed to raise an issue with the trial court regarding the length of time between the indictment for continuous sexual abuse of a child and the start of the trial.*

[Petitioner] complains that I failed to request a continuance in order to more adequately prepare for trial. While it is true that I was not appointed to represent [Petitioner] on the continuous sexual abuse of a child case until January 24, 2001, I was already representing [Petitioner] on the previous indictments for possession of child pornography and continuous sexual abuse of a child. The indictments were returned on those two charges on December 17, 2009 and I was appointed to represent [Petitioner] on October 22, 2009. It is disingenuous to claim that the defense had less than 90 days to prepare for trial, when I had already been representing [Petitioner] for over two years on charges which arose out of the same allegations and evidence as the instant prosecution. Furthermore, I had ample time to prepare for the charge which ultimately went to trial. In my professional opinion,

there was no additional acts which were necessary on my part in order to present an adequate defense.

7)  *I failed to clearly present the plea bargain offer made the day before trial begun.*

A hearing was held on April 1, 2011, in which the State's final plea-bargain offer was presented to [Petitioner] on the record. At that hearing, [Petitioner] was accurately aware of the State's final plea-bargain offer, which was essentially that he would enter an open plea of guilty to five counts of aggravated sexual assault of a child and ten counts of possession of child pornography, in return for the State dismissing its two pending charges of continuous sexual abuse of a child. The offer also stipulated that the State would not agree to specified terms of imprisonment, nor that such terms would be served concurrently. It was further explained at the hearing that were he convicted of continuous sexual abuse of a child, he would not be eligible for parole, while he would be eligible for parole after serving half the calendar time assessed on the aggravated sexual assault convictions. It was also made clear to [Petitioner] at the hearing that the range of punishment on the possession of child pornography was from two to ten years incarceration. [Petitioner] admitted on the record at that hearing that he understood the terms of the State's final plea-bargain offer. Finally, the trial court directly asked [Petitioner] whether there was "anything [Petitioner] wanted to ask [the court] about anything." [Petitioner]-who was sworn in for purposes of the hearing-responded to the trial court that he had no questions.

8)  *Two jurors were left on the jury who should have been stricken.*

[Petitioner] complains that Mr. Weathers and Ms. Heises should not have been allowed on the jury due to the fact that their responses to questions asked in the State's voir dire revealed that Mr. Weathers had a friend who was sexually abused as a child, and that Ms. Heises herself had been abused as a child. During the State's voir dire, in response to a question whether any of the veniremen themselves or friends had been the victim of child sexual abuse, the following transpired:

18      MS. MINTON: Okay. Thank you.
19      Anyone else in the middle section?
20      (Hand raised)
21      MS. MINTON: Okay. Mr. Weathers.
22      PROSPECTIVE JUROR: A friend.
23      MS. MINTON: A friend?
24      PROSPECTIVE JUROR: Uh-huh.
25      MS. MINTON: Was anyone ever prosecuted?
1       PROSPECTIVE JUROR: To my knowledge, no.
2       MS. MINTON: Did the person not tell or they

3     did tell and it wasn't dealt with?

4     PROSPECTIVE JUROR: I don't think they told.

5     MS. MINTON: You don't think they told.

6     Anything about that situation that makes you believe you

7     couldn't be fair in this case to both sides?

8     PROSPECTIVE JUROR: No.

9     MS. MINTON: Okay. Thank you. Ms. Heiser?

10    PROSPECTIVE JUROR: It was self.

11    Approximately too young to remember. Five or six. I

12    believe they were prosecuted because I remember going to

13    court as a child, but that's about all I remember.

14    MS. MINTON: Okay.

15    PROSPECTIVE JUROR: I'm sorry? Self.

16    MS. MINTON: Self, okay. I thought you said

17    something else. I'm sorry.

18    PROSPECTIVE JUROR: Yeah. I'm sorry. Self

19    and actually a friend.

20    MS. MINTON: Okay. But you were very

21    small --

22    PROSPECTIVE JUROR: Yeah.

23    MS. MINTON: -- and you don't really --

24    PROSPECTIVE JUROR: Only from tales over the

25    years do I remember. But myself, I don't really

1     remember.

2     MS. MINTON: Okay. Anything about that,

3     since it's happened to you, but you don't really

4     remember a lot about it, that would make you believe you

5     couldn't be fair to both sides on this case?

6     PROSPECTIVE JUROR: No, because I don't

7     really have any recollection. So I can't judge on what

8     I don't know.

9     MS. MINTON: Okay. Thank you.

As shown by the responses given by Mr. Weathers and Ms. Heises, they each admitted that the disclosed experiences would not have any effect on their ability to be impartial and fair. During the Defense voir dire, Mr. Weathers allowed as to how he would be able to consider the full range of punishment-including the minimum-were [Petitioner] found guilty, and that he would have to hear evidence before he could find [Petitioner] guilty. Ms. Heiser also stated that she would have to hear evidence before she would be able to find [Petitioner] guilty. Based on these responses, I made a strategic decision to not use a strike on Mr. Weathers or Ms. Heiser. Rather, I used strikes on jurors whom in my professional opinion were less desirable  jurors from a defensive standpoint.

9)      *I failed to argue that the nude pictures of complainant were not child pornography*

[Petitioner] complains that I refused to request an adversarial hearing or otherwise contest the assertion that all of the nude pictures of complainant were not child pornography, rather, some were examples of a "nudist" culture, or an "immoral growth chart" as argued in [Petitioner]'s Memorandum in Support. Based on the facts that in several of the depictions, the complainant is performing sexual acts upon herself and that [Petitioner] confesses to sexually abusing the complainant; I made a strategic trial decision that a "nudist" or "growth chart" argument would only insult and inflame the jury. Based on my professional opinion, such arguments would have eradicated any credibility the defense had in the minds of the jury, and would have been counterproductive rather than helpful.

10)     *I failed to hire a private investigator.*

[Petitioner] complains that I failed to hire a Private Investigator to do any investigative work on the case. However, [Petitioner] fails to articulate what an investigator would have discovered, how any such discoveries would have benefitted the defense, or how such discoveries would have reasonably changed the result of the proceeding. Rather, the evidence to be used by the State was readily available for inspection well before the trial date. Crime scene photographs, audiotapes, videotapes of the complainant and her siblings, and the recorded confessions of [Petitioner] were available and reviewed. Additionally, the actual child pornography itself was made available for defense counsel review at the Tarrant County District Attorney's Office. Moreover, I hired an investigator to serve subpoenas on the witnesses which I felt needed to be available for trial. I also retained the services of a psychologist and a mitigation specialist to assist me in my representation of [Petitioner]. In my professional opinion, with the exception of the service of subpoenas, a Private Investigator's assistance was not necessary in this case and I made a strategic trial decision to forgo such unnecessary services.

11)     *I failed to locate, interview or subpoena any witnesses to testify.*

[Petitioner]'s complaint here is directly contradicted by his sworn testimony at trial. Before the Defense closed at trial, [Petitioner] was examined by undersigned counsel under oath. The record shows the following transpired:

    24      Q.  All right. And have I also explained to you that
    25      I have subpoenaed witnesses in your behalf, I've
    1       subpoenaed your ex-wife, Robin McElvain, and she is
    2       currently in the hall under subpoena and she is
    3       accompanied by her attorney, Mr. Scott Brown, and have

```
4          you chosen to not attempt to call her as a witness in
5          this case?
6          A. Yes.
7          Q. Okay. And are there any other witnesses that we
8          have discussed that I -- I've subpoenaed other
9          witnesses. But are there any other witnesses that we've
10         discussed that you would have wanted to testify?
11         A. No.
12         Q. Okay. And so at this time for purposes of our
13         defense in the guilt/innocence phase of your trial, I'm
14         planning to rest and not offer any further evidence or
15         testimony from any further witnesses. And is that your
16         understanding and are you in concurrence with that?
17         A. Yes, I am.
18         MS. CAMPBELL: I have nothing further, Your
19         Honor.
20         THE COURT: Okay. . . .
```

Contrary to [Petitioner]'s assertion after the fact, at the time of trial he admitted under oath that witnesses had been discussed with undersigned counsel; there were no witnesses that he wished to be called to testify; and, that he agreed with and was satisfied to not call any witnesses to testify on his behalf. Further, [Petitioner]'s Application and Memorandum fail to set forth the identify of any witnesses whom undersigned counsel should have subpoenaed, what these witnesses would have testified to; or how such testimony would have helped the Defense or changed the result of the proceeding.

12)    *I failed to present any mitigating circumstances to help the Defendant.*

[Petitioner] complains that though I did have him interviewed by a mitigation specialist, I presented no mitigation evidence in his behalf at punishment. I retained a mitigation specialist, Mary Burdette, to interview [Petitioner] in an attempt to gather evidence which might be helpful in mitigation of punishment should the jury return a guilty verdict. No information helpful to the defense was located by this effort. [Petitioner] raised the possibility of presenting evidence at punishment of his interests nudism and nude photography. He further asserts in his Memorandum in Support that evidence of his history of seeking out and viewing child pornography would have tended to reduce his moral blameworthiness in the eyes of the jury. I made a strategic trial decision to not present such a laundry-list of [Petitioner]'s history of seeking out child pornography, as in my professional opinion such a presentation would not have elicited a feeling of empathy from the jury. I believed that due to the blatant sexual nature of the pictures and video of the complainant, any "nudism" or "photography" argument would have only further inflamed and insulted

the jury.

13) *I failed to consider the possibility of supernatural, satanic influences playing a role in [Petitioner]'s conduct.*

[Petitioner] complains generally that I failed to consider as a viable defensive strategy that his tales of demonic possession, tarot cards, witch spells and psychics could have opened a pathway for demonic forces to enter and take over his mind. I made a strategic decision to forego such an argument. I did so because I am an officer of the court, and I understand that I have an obligation to refrain from presenting frivolous, nonsensical, and farcical arguments. I believe that Texas courts are places for evidence, not superstition. In my professional opinion, presenting such evidence would not have had a positive influence in the minds of the jury, but quite the opposite. Moreover, in all likelihood presenting such "evidence" would have required that [Petitioner] himself testify-thereby subjecting himself to cross-examination-which he himself stated under oath that he did [not] wish to do.

14) *I failed to correct error in jury instruction defining "sexual contact."*

[Petitioner] complains generally in him Memorandum in Support that the definition of "sexual contact" included in the jury instruction is inapplicable to his case. [Petitioner] was charged with continuous sexual abuse of a child by committing two instances of sexual performance by a child over a period of time extending over 30 days. Sexual performance by a child can be accomplished *into alia* by inducing a child to engage in "sexual conduct." That same statute directs that "sexual conduct" may be evidenced by a demonstration of "sexual contact." As the State here was required to prove beyond a reasonable doubt that [Petitioner] had committed two instances of sexual performance by a child, an instruction setting forth a critical definition pertaining to those underlying offenses was entirely proper.

15) *I failed to send [Petitioner] his file until he approached the State Bar. Even then I refused to answer subsequent letters asking about missing documents.*

[Petitioner] complains that he believed I was dilatory in sending his client file to him. His client file was sent to him in 2014. As this complaint has no relationship with the representation I provided to [Petitioner] in his continuous sexual abuse of a child case which went to the jury in 2011, no further response is necessary.

16) *I failed to investigate [Petitioner]'s claim that the oral sex the complainant discussed with the outcry witness referred to events occurring in the complainant's biological family prior to her being placed in foster care with [Petitioner].*

I properly investigated every potential defense and impeachment opportunity available prior to trial. Any similarity between the complainant's oral sex outcry here to Lindsey Dula and her previous oral sex outcry regarding her biological family can be explained by the fact that the actions taken by the perpetrators were similar. Moreover, any similarity between the two respective outcries does not mean that the outcry here was false. It must be noted again that the complainant was not cross-examined at trial due to express instructions from [Petitioner], a fact which was put on the record at trial.

17) *I made no attempt at bond reduction.*

Due to the seriousness of the charged offenses, [Petitioner]'s bail was set at $450,000. I recall that [Petitioner] had originally possessed access to funds sufficient to make bail in that amount located in some sort of pension fund. However, against undersigned counsel's advice, [Petitioner] signed authority over those funds to his then-wife, who thereupon divorced him without posting any of the funds for [Petitioner]'s bail. I recall that in my informal conversations with the trial court regarding a bail reduction, there was hesitancy to set a lower amount. Moreover, Texas law holds that where a motion for bond reduction is unlikely to be granted, any failure to formally move for a bond reduction is harmless.

18) *I improperly preserved [Petitioner]'s motion to suppress confession for review on appeal.*

[Petitioner] complains that I failed to preserve the issue of improper inducement by Detective Trevino in [Petitioner]'s confession as to the location of the pornographic pictures and video of the complainant. My co-counsel, John Stickels, conducted the cross-examination of Detective Trevino at hearing on the motion to suppress confession. During that cross-examination of Detective Trevino, the following took place:

11    Q. And do you remember telling him that he's not
12    going to get -- basically that's he not going to get any
13    more -- get in any more trouble or any more charges
14    filed against him if he tells you where the -- where the .
15    pictures are?
16    A. Yes, sir.
17    Q. You told him that, correct?
18    A. Yes, sir.
19    Q. What did you mean by that?
20    A. Well, he was already being charged with what he
21    was charged with.
22    Q. And what was he charged with at that time?

23     A. At the time it was possession of child
24     pornography and aggravated sexual assault of a child.
25     Q. Okay. And you told him that he wouldn't get any
1     more charges --
2     A. Yes.
3     Q. -- correct?
4     And then he told you the next day where the stuff
5     you were looking for could be found?
6     A. Yes.
7     MR. STICKELS: Pass the witness.
8           REDIRECT EXAMINATION
9     BY MS. MINTON:
10     Q. Detective Trevino, you -- you didn't file any
11.    more charges; is that correct?
12     A. No, I did not.
13     Q. And; in fact, when you filed the aggravated
14     sexual assault of a charge -- charge -- of a child
15     charge with the District Attorney's office, we actually
16 .   upgraded it to continuous sexual abuse of a young child,
17     did we not?
18     A. Yes, you did.
19 ·   Q. And the Grand Jury also added another continuous
20     sexual abuse of a young child; is that correct?
21     A. Yes.
22     Q. All of these acts that [Petitioner] was charged
23     with and continuous sexual abuse of young child are acts
24     that [K.M.] had already talked about having to do in her
25     forensic interview; is that true?
1     A. Yes.
2     Q. But you're not a crimes against children
3     detective, are you?
4     A. No, I'm not.
5     Q. And you filed aggravated sexual assault and we
6     changed the charge; is that right?
7     A. Yes, you did.
8     Q. Okay.
9     MS. MINTON: Pass the witness.

     During the discussion with the trial court regarding when the court would view the recording of the first interview wherein Detective Trevino had made statement that [Petitioner] would not get any more charges, the following transpired:

10     MR. STICKELS: I assume you haven't watched

11    the inter -- interview, Judge?
12    THE COURT: Which one are you talking about?
13    MR. STICKELS: The first one.
14    THE COURT: I don't plan on watching it
15    today. Is this going to be an hour and a half, two
16    hour?
17    MR. STICKELS: It's an hour and a half one,
18    Judge.
19    MS. MINTON: Is there any reason that the
20    Judge can't watch it after we've concluded the hearing?
21    MR. STICKELS: Oh, no, I mean, not -- not
22    right now. I didn't mean right now at this moment. I'm
23    sorry, Judge.
24    THE COURT: You mean before 9:00 o'clock
25    tomorrow morning?
1    MR. STICKELS: Yes, sir.
2    THE COURT: I actually hadn't planned to.
3    Are there things in there you're objecting to?
4    MR. STICKELS: **We're objecting -- he pretty**
5    **much stated what's in the -- the part about the-**
6    **filing more charges.** I think if you just watch the
7    first 15 or 20 minutes -- I guess, I'm going to ask you
8    to watch all of it, Judge.
9    THE COURT: Okay.
10    MR. STICKELS: Oh, the last third of it.
11    MS. CAMPBELL: The last third --
12    MR. STICKELS: The last third of the first
13    one.
14    THE COURT: The last third of the -- okay.
15 ·    Okay. I guess I need to watch it at some point.

It is plainly evident from the dialog set forth in bold above that my co-counsel objected to the admission of [Petitioner]'s confession of the location of the pictures and tape on the grounds of improper inducement. Moreover, an oral motion to suppress is sufficient to preserve the matter for review. Further, when the trial court began to bring the hearing to a close, he asked Mr. Sickles if there was anything to add, and Mr. Stickels replied that "we stand on our objections." Additionally, Mr. Stickels reurged our objections when the confessions were introduced at trial.

Notable as related to the preservation issue, there is a very strong question as to whether Detective Trevino's statements to [Petitioner] regarding no more charges can even be construed as an illegal inducement. It is questionable whether Detective Trevino's statement meets such criteria.

In any event, based on the state of the record as set forth above, the opinion of the court of appeals holding that the issue was not preserved is cause to file a Petition for Discretionary Review with the Court of Criminal Appeal to challenge that holding, rather than ineffectiveness claim against trial counsel.

**In reference to Ground Number Fifteen of [Petitioner]'s Application for Writ of Habeas Corpus, I respond as follows:**

[Petitioner] complains that I failed to file a Motion for New Trial. However, at the punishment phase in [Petitioner]'s case conducted on April 7, 2011. On that very same date, the trial court appointed appellate counsel, the Honorable Leigh Davis, to represent [Petitioner] on appeal. As I no longer represented [Petitioner] and he was represented by another attorney, I did not have the authority to file a motion for new trial. Moreover, [Petitioner] did not ask me to file a motion for new trial on his behalf at any time after the sentence was handed down.

In closing, this case presented a challenge for the defense, as the complainant's testimony was powerful and convincing. Further, the evidentiary situation was complicated by the fact that during interviews with detectives Trevino and Miller, [Petitioner] confessed to sexually abusing the complainant and taking pornographic photographs of her. Moreover, [Petitioner] himself disclosed the location of the numerous pornographic photographs and videotape of the complainant. Additionally, [Petitioner] stated on the record that he did not want me to cross-examine the child complainant, essentially leaving her powerful and convincing testimony unchallenged.

As part of the duty to zealously defend [Petitioner], we challenged the continuous sexual abuse of a child statute at every opportunity, including a contested hearing on our motion to quash, and a statutory objection to the charge on guilt/innocence. Additionally, we challenged the competency of the complainant at a contested hearing. Identifying the damaging nature of the confessions, pictures, and video evidence, the suppression of those statements and items was hotly contested-as demonstrated above-though ultimately unsuccessful.

In my pursuit of helpful facts or evidence, I retained both a psychologist and mitigation specialist to assist in my defense of [Petitioner]. That no helpful information was obtained through these efforts does not minimize the advocacy.

Finally, not only did I visit [Petitioner] numerous times in the Tarrant County Jail, I spent the better part of nearly two days with [Petitioner] reviewing the digital evidence in the possession of the State in the trial court. We viewed the evidence in court, at a computer terminal situated to provide privacy as we reviewed the voluminous evidence to be used by the State. That [Petitioner] is unhappy with the

result of his trial is understandable. However, such unhappiness does not render my representation ineffective.

Adm. R., State Writ 180-98, ECF No. 12-20 (record references and citations omitted) (emphasis in original).

The state habeas court found counsel's affidavits credible and supported by the record and adopted the state's proposed factual findings, too numerous to list here, refuting Petitioner's claims. *Id.* at 212-20. Applying *Strickland* to the totality of counsel's representation, the state court concluded that Petitioner failed to prove that counsel was ineffective or that there existed a reasonable probability that, but for counsel's alleged acts of misconduct, the result of his trial would have been different. *Id.* at 228-34. Relying on the presumptive correctness of the state courts' factual findings, and having independently reviewed Petitioner's claims in conjunction with the state court records, the state courts' adjudication of the claims is not contrary to or an unreasonable application of *Strickland.*

Petitioner failed to show that counsel's representation fell below objective standards of reasonableness or that the defense was prejudiced as a result of counsel's representation. His claims are largely conclusory, with no legal and/or evidentiary basis, refuted by the record, involve state evidentiary rulings or other matters of state law, involve strategic and tactical decisions made by counsel, or would have required counsel to make frivolous requests, motions, or objections, all of which generally do not entitle a state petitioner to federal habeas relief. *See, e.g., Strickland,* 460 U.S. at 689 (holding strategic decisions by counsel are virtually unchallengeable and generally do not provide a basis for postconviction relief on the grounds of ineffective assistance of counsel); *Johnson v. Cockrell,* 306 F.3d 249, 255 (5th Cir. 2002) (concluding that counsel is not required to

make futile motions or frivolous objections); *Green v. Johnson,* 160 F.3d 1029, 1037, 1042 (5th Cir. 1998) (providing "[m]ere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue" and "counsel is not required to file frivolous motions or make frivolous objections"); *Teague v. Scott,* 60 F.3d 1167, 1172 (5th Cir. 1995) (stating an "attorney's actions during voir dire are considered to be a matter of trial strategy"); *United States v. Green,* 882 F.2d 999, 1003 (5th Cir. 1989) (providing "[a] defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial"); *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985) (providing ineffective assistance claims based upon uncalled witnesses are disfavored and conclusory if unsupported by affidavits indicating the witnesses' willingness and availability to testify and the substance of the proposed testimony).

A petitioner shoulders a heavy burden to refute the premise that "an attorney's actions are strongly presumed to have fallen within the wide range of reasonable professional assistance." *Messer v. Kemp,* 760 F.2d 1080, 1090 (11th Cir. 1985). Petitioner presents no evidentiary, factual, or legal basis in this federal habeas action that could lead the Court to conclude that the state courts unreasonably applied the standards set forth in *Strickland* based on the evidence presented in state court. 28 U.S.C. § 2254(d).

Under his seventeenth ground, Petitioner claims his appellate counsel, Leigh Warren Davis, was ineffective by failing to raise one or more of the grounds contained in this federal petition on appeal. Pet. 7(I), ECF No. 1. Counsel responded to the allegation as follows:

> As I read [Petitioner]'s writ, he is alleging nine ways I was ineffective in Ground Fourteen and one in Ground Fifteen. I will respond to each in turn.

First, [Petitioner] alleges that I was ineffective because I "should have used stronger arguments." The only response I can make to this is that I advanced the strongest arguments I could. [Petitioner] expands this argument in his briefing to include that I should have drafted an argument to comport with the objection made in the trial court. More specifically, he complains that the second argument on appeal about his confession should have been crafted to comport with the actual objection in the trial court. That is, however, precisely the contention made in the first argument on appeal. Moreover, the failure to also complain of the involuntariness of his statement is an issue properly directed to trial counsel, which McElvain does in Ground Five.

Second, [Petitioner] contends that I was ineffective because I did not complain on appeal about the absence of a lesser included jury instruction. I made no such argument on appeal because I could not. No lesser included jury charge was requested; therefore, there was no error to fail to give one to the jury. [Petitioner] implicitly recognizes this by including trial counsel's failure to request one in Ground Five.

Third, [Petitioner] contends that I was ineffective by failing to argue that his trial counsel had insufficient time to prepare for trial. [Petitioner] complains of the time between a January 19, 2011 indictment date and an April 1, 2011 trial date. This amount of time far exceeds the minimum time mandated by article 1.051(e). Moreover, the record contained no complaint about insufficient time or a denied motion for continuance. Thus, there was no error preserved for appeal. Again, this is a complaint properly directed at trial counsel, which [Petitioner] does in Ground Five.

Fourth, I interpret [Petitioner]'s next complaint to be that I was ineffective for failing to note that the evidence of extraneous offenses was not segregated from other evidence during jury deliberations. Again, the record contains no complaint about this; therefore no error was preserved. Further, the jury was properly charged about extraneous offenses and is presumed to follow the instruction given it. Again, this is a claim properly directed at trial counsel, which [Petitioner] does in Ground Five.

Fifth, [Petitioner] complains I was ineffective for failing to complain of seating on the jury of two improper jurors. He contends that they should not have been on the jury because one was the victim of child sex abuse while the other had a friend who was. [Petitioner] cites a portion of the record regarding one of these persons. Trial counsel challenged this prospective juror, and that challenge was overruled. The trial court's decision on this point appears to be correct because the prospective juror had not clearly stated an inability to follow the law; he had only stated concerns about how things he might hear would affect him in light of his

wife's experience.

Sixth, [Petitioner] complains that I failed to note that there was no private investigation conducted nor any mitigating evidence or defense witnesses presented. Whether or not any investigation was conducted is generally something not found in the trial record, and [Petitioner] makes no note of what would have been found had one been conducted. What was or was not presented at trial is a question for trial counsel. Without information in the record about why trial counsel did or did not pursue a specific strategy or course of action, appellate counsel cannot present any arguments about the propriety of the action or lack of action. [Petitioner] also complains of trial counsel's failure to hire an investigator in Ground Five.

Seventh, [Petitioner] complains that I was ineffective for failing to point out a discrepancy in the second outcry witness's testimony. I could interpret this point one of two ways: that the testimony varies from a prior out-of-court statement by that witness or that the testimony differs from the testimony of another witness. In either event, [Petitioner] does not explain the legal argument that this would support. Though it's presumably sufficiency of the evidence, there's no indication that this would have made the evidence insufficient, and discrepancies in the evidence are weighed and resolved by the jury.

Eight, [Petitioner] complains that I was ineffective for failing to complain about the State's use of two outcry witnesses. It appeared to me that the State's basis for calling a second outcry witness -- that the victim had spoken to no one else about the incident before the second outcry witness and the second outcry witness was providing more and different information -- was legally permissible under the case cited by the State, *Hernandez v. State,* 973 S.W.2d 787 (Tex. App.--Austin 1998, no pet.) and its progeny.

Ninth, [Petitioner] complains I was ineffective for failing to complain of prosecutorial misconduct--specifically, the prosecutor's telling the jury to "do your duty." Texas law allows a plea for law enforcement by the State in closing arguments. [Petitioner] cites no Texas case holding that a request to jurors to do their duty is improper. One of the federal cases [Petitioner] cites notes only that such a statement "can be used to convey the idea to the jury that their job is to convict." Under the cited federal cases such a statement is subject to harm analysis including the weight of the evidence suggesting the defendant's guilt. [Petitioner] includes no such analysis in his writ, and the record in this case seems to present overwhelming evidence of guilt; thus, even under the cited federal law, [Petitioner] would appear unable to prevail.

Tenth, [Petitioner] complains that I was ineffective for failing to file a motion for new trial at any point in the appellate process. His brief expands this argument.

The brief notes the general proposition that defendants are entitled to effective assistance of counsel during the motion for new trial period. He then notes, citing *Trevino v. Thaler,* 569 U.S. ___ (2013) that Texas's motion for new trial procedures virtually preclude presentation of ineffective assistance of counsel on direct appeal. He then concludes that this "fatally defective"procedure makes it imperative that counsel raise ineffective assistance of counsel in a motion for new trial so that this issue can be considered on direct appeal. There's a logical disconnection in this. How can it be done and why should it be done if it's virtually impossible to do? Moreover, this ignores the long-standing, well-established rule in Texas that ineffective assistance of counsel is best developed in a writ. Further, this ignores the res judicata risk of presenting and having considered the ineffective assistance of counsel argument only to have more compelling and detailed information come to light when there's been ample time to explore the issues. Finally, I had a lengthy telephone conversation with trial counsel shortly after being appointed. Nothing she told me suggested any hint of ineffectiveness. In my experience, a case this complex cannot be adequately investigated in 30 days making the filing of a thorough motion for new trial alleging ineffectiveness of counsel virtually impossible. [Petitioner] himself implies as much by complaining that I was ineffective for failing to argue that his trial counsel had only two-and-a-half months to prepare for trial.

Adm. R., State Writ 173-78, ECF No. 1.

The state habeas court found counsel's affidavit credible and supported by the record and adopted the state's proposed factual findings refuting Petitioner's claims. Adm. R., State Writ 224-27. Based on its findings, the state court concluded that counsel's decisions in deciding which issues to raise on direct appeal was the result of reasonable appellate strategy. Adm. R., State Writ 224-27. Relying on the presumptive correctness of the state courts' factual findings, and having independently reviewed Petitioner's claims in conjunction with the state court records, the state courts' adjudication of the claims is not contrary to or an unreasonable application of *Strickland.* Appellate counsel is not required to raise every conceivable argument urged by his client on appeal, regardless of merit. *Smith v. Robbins,* 528 U.S. 259, 287-88 (2000). Nor is counsel required to raise issues not preserved for appeal. *Koch v. Puckett,* 907 F.2d 524, 527 (5th Cir. 1990). It is counsel's duty to choose among potential issues, according to his judgment as to their merits and the tactical

approach taken. *Jones v. Barnes,* 463 U.S. 745, 749 (1983). Petitioner has presented no argument or evidence in this federal habeas action that could lead the court to conclude that the state courts unreasonably applied the standards set forth in *Strickland* based on the evidence presented in state court. 28 U.S.C. § 2254(d). Prejudice does not result from appellate counsel's failure to assert meritless claims or arguments. See *United States v. Wilkes,* 20 F.3d 651, 653 (5th Cir. 1994). Thus, it follows, that counsel was not ineffective for failing to raise petitioner's claims on appeal.

### F. Texas Penal Code § 21.02

Under his fifteenth ground, Petitioner claims Texas's continuous-sexual-abuse statute under § 21.02 of the penal code violates the Texas Constitution. Pet. 7(h), ECF No. 1. This claim is not cognizable in federal habeas review. *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991). As noted early in this opinion, federal habeas relief lies only to rectify a violation of the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *McGuire,* 502 U.S. at 67-68.

### G. Mistake of Fact

Finally, under his sixteenth ground, Petitioner claims that he was "unaware of the Penal Code by which he was charged"--*i.e.,* unaware that his conduct was illegal Pet. 7(h), ECF No. 1.

Texas Penal Code § 8.03 provides:

> (a) It is no defense to prosecution that the actor was ignorant of the provisions of any law after the law has taken effect.

> (b) It is an affirmative defense to prosecution that the actor reasonably believed the conduct charged did not constitute a crime and that he acted in reasonable reliance upon:

> > ( 1) an official statement of the law contained in a written order or grant of permission by an administrative agency charged by law with responsibility for interpreting the law in question; or

      (2) a written interpretation of the law contained in an opinion of a court of record or made by a public official charged by law with responsibility for interpreting the law in question.

      (c) Although an actor's mistake of law may constitute a defense to the offense charged, he may nevertheless be convicted of a lesser included offense of which he would be guilty if the law were as he believed.

TEX. PENAL CODE ANN. § 8.03 (West 2011).

In support of the defense, Petitioner claims to have relied upon "photo books of nude children protected by the First Amendment by Jock Sturgis [sic], David Hamilton, and Sally Mann"; his familiarity with the nudist lifestyle; his familiarity with Iowa law and unfamiliarity with Texas law; and a belief that it was legal to photograph his own daughter. *Id.* The state habeas court, however, found that Petitioner was not entitled to the "mistake of law" defense because he presented no specific facts or evidence to satisfy § 8.03(b)(1) or (2). Adm. R., State Writ 224, ECF No. 12-20. Deferring to those findings, Petitioner has not established that the state courts' decision on this matter was contrary to, or involved an unreasonable application of, clearly established federal law as established by the Supreme Court or was based on an unreasonable determination of the facts in light of the evidence. 28 U.S.C. § 2254(d).

## VI. CONCLUSION

For the reasons discussed herein, Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **DENIED**. Further, for the reasons discussed, a certificate of appealability is **DENIED**.

      **SO ORDERED** on this 21st day of December, 2017.

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**